UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANJITH SINGH,

        Petitioner,

      v.                                                        18-CV-794
                                                                  DECISION AND ORDER
MATTHEW G. WHITTAKER,
Acting Attorney General of the United
States;

THOMAS FEELY,
Field Office Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;

DEPARTMENT OF HOMELAND
SECURITY;

THOMAS BROPHY,
Facility Director, Buffalo Federal
Detention Facility,

        Respondents.
_____


      Ranjith Singh is a citizen of India under a final immigration order of removal from

the United States.  On July 29, 2018, Singh filed a *pro se* petition for a writ of habeas

corpus under 28 U.S.C. § 2241, seeking release from his detention at the Buffalo

Federal Detention Facility in Batavia, New York, pending his removal.  Docket Item 1.

On October 5, 2018, Singh asked this Court to release him, Docket Item 2, and on

November 26, 2018, the respondents answered, Docket Item 6, and filed a

memorandum opposing Singh's petition, Docket Item 8.  On December 7, Singh replied.

Docket Item 9.  On December 21, 2018, the respondents supplemented the record in

response to this Court's direction, Docket Item 13, and on January 11, 2019, Singh filed a reply to that, Docket Item 15.

For the reasons that follow, this Court conditionally grants Singh's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Singh is a native and citizen of India who left India in 1988 and arrived in the United States around that same time without inspection by an immigration official.[1] Docket Items 2 at 1; 6-1 at 2; and 6-2 at 26, 29. In July 2008, Singh was jailed at the Riker's Island Correctional Facility in East Elmhurst, New York, where a DHS agent confirmed his immigration status. Docket Item 6-1 at 2, 20-21. On July 24, 2008, DHS served Singh with a Notice to Appear that charged him with being "an alien present in the United States who has not been admitted or paroled." Docket Item 6-2 at 18-19. On the same day, Singh signed a form waiving his right to ten-days' notice and requesting an immediate hearing before an immigration judge ("IJ"). *Id.* at 19.

On May 21, 2009, IJ Alan Vomacka ordered Singh removed from the United States to India. *Id.* at 15. IJ Vomacka denied Singh's application for asylum, his application for withholding removal under section 241(b)(3) of the Immigration and

---

[1] Singh entered the United States at a place not designated a "port of entry"; therefore, he was not admitted, inspected, or paroled into the United States by a U.S. Immigration Official. Docket Item 6-2 at 21.

Nationality Act,[2] and his application for protection under the Convention Against Torture. *Id.*

On August 10, 2009, DHS released Singh from custody subject to an order of supervision. *Id.* at 13. On February 28, 2010, while on release pending removal, Singh was arrested by New York City police and charged with second degree murder, tampering with physical evidence, and criminal possession of a weapon, all in violation of New York State law. Docket Item 6-1 at 3-4. In May 2012, Singh was convicted of manslaughter in a New York State court and sentenced to nine years' imprisonment. Docket Items 6-1 at 4 and 6-2 at 2.

By November 2017, Singh had served his criminal sentence. Docket Item 6-1 at 4. So on November 8, 2017, DHS revoked Singh's order of supervision and determined that he would remain in DHS custody pending his removal. Docket Item 6-2 at 11. On November 14, DHS served Singh with a formal Warning for Failure to Depart Form I-229(a), along with a list of actions DHS required Singh to take to assist in obtaining a travel document for his removal from the United States. Docket Item 6-2 at 8-10. Three days later, DHS requested travel documents on Singh's behalf from the Consulate General of India. Docket Item 6-2 at 22-30.[3] According to a DHS agent, DHS has

---

[2] Under 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

[3] Although the record includes a letter from a DHS Deportation Officer to the Indian Consulate dated November 17, 2017, asking for Singh's travel documents, Docket Item 6-2 at 22-30, a DHS agent later filed a declaration with this Court providing that the agency's "first request to the Indian Consulate for a travel document for SINGH occurred on November 29, 2017." Docket Item 13 at 2.

contacted the Indian Consulate a number of times since December 2017 asking about the status of Singh's travel documents. Docket Item 6-1 at 5. The agent has declared that the Indian Consulate is in the process of verifying Singh's identity and DHS's request for Singh's travel documents remains pending. *Id.*

Because it had been more than a year since DHS requested Singh's travel documents, on December 11, 2018, this Court directed DHS to file a declaration "setting forth a date by which time [the agency] reasonably expects Singh to be repatriated to India." Docket Item 10.[4]  In response, on December 21, 2018, DHS Deportation Officer Mitchell L. Muehlig filed a declaration with the Court. Docket Item 13 at 1. According to Muehlig, DHS has had follow-up conversations with Indian consular officials every three weeks. *Id.* at 2. Muehlig explained that in the past, Singh had provided New York State officials with different names, including "Randy Singh," "Jauandar Singh," "Ranjit Singh," "Jsunder Singh," and "Rana Singh," along with two dates of birth: November 15, 1967, and November 11, 1966. *Id.* at 3. Additionally, Singh provided different names for family members in 1992, 2008, 2010, and 2018. *Id.* at 3-4. For example, in 1992, he provided the name "Gurdev Kaur" for his mother and "Swaran Singh" for his father, *id.* at 3, and in 2008, he provided the name "Gurdue Kuaer" for his mother and "Swinrah Singh" for his father, *id.* at 3-4. At other times in 2008 and 2010, Singh provided the names "Eureaer Kuer" and "Deaver Kuhar" for his mother and "Ivrean Singh" and "Swrena Singh" for his father. *Id.* at 4. Muehlig contends that the various names Singh

---

[4] United States District Courts have broad authority to "direct the parties to expand the record by submitting additional materials relating to the petition" under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which applies in immigration habeas proceedings under Rule 1(b) of those rules.

has provided for his family members make it more difficult for the Indian Consulate to ascertain his true identity.  *Id.* at 3.

Muehlig has advised that DHS "determined to continue SINGH's detention because DHS is working with the government of India and a travel document is expected."  *Id.* at 4.  "The time frame of this expectation is not specific," however,  "as India attempts to verify SINGH's identity amidst all SINGH's past/present lies about his identity."  *Id.*  Muehlig explained that as soon as it "secures a travel document from India for SINGH, it will then be only a matter of weeks before SINGH is physically repatriated back to India."  *Id.* at 5.  When that travel document will be secured, however, is apparently anyone's guess.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government contends that Singh's detention is lawful under 8 U.S.C. § 1231(a).  Docket Item 8 at 4-5.  Singh makes three arguments to the contrary. Docket Item 1.  First, he claims that his continued detention violates § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *Id.* at 13. Second, he claims that his "prolonged detention more than six months violates his right to substantive due process under the Fifth Amendment."  *Id.* at 13-14.  Finally, he claims that "his prolonged detention more than six months without a meaningful review of his detention in accordance with federal regulations violates his right to procedural due process under the Fifth Amendment."  *Id.* at 14.

As Singh is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I. SECTION 1231 DETENTION

### A. Singh's Indefinite Detention

Section 1231 "addresses immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i)     The date the order of removal becomes administratively final.
>
> (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).  After the ninety-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (quoting 8 U.S.C. § 1231(a)(6)).  But § 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention." *Id.* at 689.

During the first six months after the expiration of the ninety-day removal period, an alien's detention under § 1231(a)(6) is "presumptively reasonable." *Id.* at 701.

After this [six]-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as "reasonably foreseeable future" conversely [must] shrink. This [six]-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

Singh's six-month presumptively reasonable period of detention under § 1231 has expired. Assuming that Singh's ninety-day removal period began on November 8, 2017, *see* Docket Item 6-2 at 11,[5] his ninety-day removal period ended on February 6, 2018, and his period of presumptively reasonable detention expired on August 6, 2018. So it has been more than a year since his removal period began, nearly a year since it ended, and about six months since the expiration of his presumptively reasonable detention.

What is more, there apparently is no significant likelihood of Singh's removal in the reasonably foreseeable future. In making that observation, this Court notes that the Supreme Court requires a detained alien to demonstrate initially only that there is "*good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701 (emphasis added). As one court in this

---

[5] This Court believes that, under 8 U.S.C. § 1231(a)(1)(B)(iii), Singh's ninety-day removal period began when he was released from New York State custody in November 2017. *See* § 1231(a)(1)(B)(iii) ("The removal period begins on the latest of the following: . . . If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."). Singh was not yet incarcerated when his order of removal became final in 2009, however. So it may be the case that his ninety-day removal period actually began in 2009. In either case, the presumptively reasonable period of detention now has expired.

district explained, "the burden upon the detainee is not to 'demonstrate' no reasonably foreseeable, significant likelihood of removal or 'show that his detention is indefinite'"; it is something less than that. *D'Alessandro v. Mukasey*, 628 F. Supp.2d 368, 404 (W.D.N.Y. 2009). And if the detainee makes that showing, the burden shifts to the government to "respond with evidence sufficient to rebut [the detainee's] showing." *Zadvydas*, 533 U.S. at 701.

Here, Singh cannot be removed to India without travel documents. Despite DHS's efforts to obtain travel documents for more than a year and its frequent follow-up communications with the Indian consulate, nothing in the record suggests that DHS is now any closer to obtaining the necessary documents than it was when Singh first was taken into custody.[6] Furthermore, despite this Court's explicit invitation, DHS has done

---

[6] 8 U.S.C. § 1231(a)(1)(C) provides that

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Courts have interpreted this provision to mean that "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal." *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003); *see Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) ("when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future"); *D'Alessandro v. Mukasey*, 628 F. Supp.2d 368, 387 (W.D.N.Y. 2009) ("the section contemplates acts of obstruction by the detainee that constitute willful refusal to cooperate with immigration authorities, not efforts to seek legally available judicial remedies"); *Ricketts v. Mule*, 2009 WL 102953, at *6 (W.D.N.Y. Jan. 13, 2009); *Powell v. Ashcroft*, 194 F. Supp.2d 209, 210 (E.D.N.Y. 2002) ("petitioner has made repeated false and conflicting representations to the INS concerning his name and citizenship [after his removal became final] and these representations have frustrated their ability to obtain the travel documents that are necessary to effect his deportation").

nothing to rebut that showing. DHS has not produced anything from the Indian

consulate providing even a possible timeline for obtaining travel documents or

deportation. On the contrary, in response to the Court's request for a date—*any* date—

by which DHS reasonably expects Singh to be repatriated to India, DHS provided no

date at all, instead simply stating that "[t]he time frame of this expectation is not

specific." Docket Item 13 at 4. In other words, DHS has no idea. And if DHS has no

idea of when it might reasonably expect Singh to be repatriated, this Court certainly

cannot conclude that his removal is likely to occur—or even that it *might* occur—in the

reasonably foreseeable future. So this Court is left to guess whether his deportation

might occur in ten days, ten months, or ten years.

The government relies on *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp.2d

301, 306 (W.D.N.Y. 2008), to argue that Singh's detention continues to be reasonable

and his removal is still reasonably foreseeable. In that case, the court concluded that

the petitioner did not meet his initial burden despite (1) the Gambian government's

failure to issue travel documents to him for almost two years, (2) statements by a United

---

In this case, the record includes documents suggesting that Singh has complied with DHS's requests to make a "timely application in good faith for travel or other documents necessary [for his] departure," as required under 8 U.S.C. § 1231(a)(1)(C). *See* Docket Item 6-2 at 22-30. On November 17, 2017, just after returning to DHS custody, a Deportation Officer submitted Singh's completed Passport Application, Indian National Verification Form, Form I-217, Passport Photos, and Immigration Charging Documents to the Indian Consulate. *Id.* at 22. Although Muehlig contends that Singh's "lies about his identity" have contributed to India's difficulty in verifying his identify, Docket Item 13 at 4, there is no indication that Singh has taken any action in bad faith to delay his deportation since the beginning of his removal period in November 2017. Moreover, Muehlig's declaration does not offer support for the characterization that Singh "lie[d]" about the names. And the government has not given this Court good reason to believe that the discrepancies in names noted above are not the result of spelling or translation errors, nicknames, or transcription mistakes.

States deportation officer to the petitioner that the government would not likely be able to obtain travel documents for him, and (3) Gambia's policy precluding the country from issuing a travel document to the petitioner due to his sexual orientation. *Id.* Based on the modest standard of "*good reason to believe*" that there is no significant likelihood of removal in the reasonably foreseeable future once a detainee's presumptively reasonable six-month period of detention after the removal period lapses, *see Zadvydas*, 533 U.S. at 701 (emphasis added); *D'Alessandro*, 628 F. Supp.2d at 404, this Court is far from certain that the standard was applied correctly in *Kassama*. But even if it was, the government's inability to provide any reasonable prediction about when deportation might happen—despite an explicit inquiry from this Court—makes the analysis even simpler and clearer here.

In *Kassama*, assuming that the petitioner met his initial burden, the court "nevertheless [found] that Respondents have met their burden on rebuttal" because "it seems likely that Gambian officials will be able to confirm Petitioner's citizenship, and issue travel documents" based on the fact that he had once lived in Gambia for twenty-one years and still had family there. 553 F. Supp.2d at 307. Even assuming that those facts adequately supported the court's conclusion, Singh's case is distinguishable. Here, the government has filed a sworn statement in response to the Court's request for *any* date by which time DHS reasonably expects Singh to be repatriated to India. Docket Item 13. In it, DHS provided no date at all, and instead said that "[t]he time frame of this expectation is not specific." Docket Item 13 at 4.

The government also relies on a number of cases from this district that have determined that a "habeas petitioner's assertion as to the unforeseeability of removal,

supported only by the mere passage of time, [is] insufficient to meet the petitioner's burden to demonstrate no significant likelihood of removal." *See, e.g., Fofana v. Holder*, 947 F. Supp.2d 329, 334-335 (W.D.N.Y. 2013) (and cases cited therein); Docket Item 8 at 7-8. But these cases are also of limited persuasive authority. *Zadvydas*'s reasoning is based in large part on the importance of the passage of time. It sets forth a presumptively reasonable six-month period of detention *after* the removal period. It is the mere passage of this time that eliminates the presumptive reasonableness of an immigrant's detention pending removal.

Furthermore, the underlying removal-period statue itself, at its core, is a time limit. *See* 8 U.S.C. § 1231(a) (government "shall remove the alien from the United States within a period of 90 days"). Indeed, the underlying constitutional concern in Zadvydas is the impact of detention pending removal on the petitioner's fundamental liberty interest: the longer a petitioner is held in dentition, the greater the impact on that interest. *See Zadvydas*, 533 U.S. at 701 ("for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"); *see also Demore v. Kim*, 538 U.S. 510, 513 (2003) (upholding constitutionality of requirement that certain individuals "be detained for the *brief period* necessary for their removal proceedings") (emphasis added); *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987) (noting that there is a "point at which [pretrial] detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal"); *Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) ("It is likewise important to note that . . . the length of Petitioner's detention is a critical factor in the calculus"). In

other words, *Zadvydas* and its progeny are all about the "mere passage of time." And in any event, in Singh's case, it is not merely the passage of time that suffices to meet his initial burden, but the passage of time combined with the fact the Indian consulate and United States government are no closer to identifying and repatriating him than they were once they first took him into custody, or, for that matter, when the respondents first ordered him removed in 2009.

8 U.S.C. § 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. "Indefinite" means "having no exact limits," "indeterminate in extent or amount," and "not clearly fixed." *Webster's Third New International Dictionary* (1993). Because neither DHS nor this Court can guess how long Singh's detention pending removal will continue with any degree of certainty, Singh's detention is indefinite by any of these definitions. The evidence that the government has provided is insufficient to rebut his showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, his continued detention violates the statute. *See Zadvydas*, 533 U.S. at 701; *Hassoun*, *supra* at *5 ("under *Zadvydas*, the reasonableness of Petitioner's detention does not turn on the degree of the government's good faith efforts. . . . Rather, the reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit"); *D'Alessandro*, 628 F. Supp.2d at 406 (government failed to rebut presumption that deportation is not reasonably foreseeable when "[r]espondents . . . can come forward with nothing other than an assertion that [detainee's] detention will end at some unspecified and unpredictable time"); *Andreasyan v. Gonzalez*, 446 F. Supp.2d 1186, 1189-90 (W.D. Wash. 2006) (finding removal not likely in reasonably foreseeable future

when alien detained for eight months, consulate states only that case was still under review pending a decision, and government continues to ask for a few more weeks); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *4 (N.D. Ill. Apr. 28, 2003) ("The period of Petitioner's post-final-order detention has at this time exceeded seventeen months and so 'the reasonably foreseeable future' must now come very quickly"); *Seretse-Khama v. Ashcroft*, 215 F. Supp.2d 37, 50 (D.D.C. 2002) (government failed to rebut showing that deportation is not reasonably foreseeable where they "have not demonstrated . . . that any travel documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months").  For that reason, Singh is entitled to some relief.

**B.      Remedy**

**1.      Delayed Release After Hearing**

"[H]abeas corpus is, at its core, an equitable remedy."  *Schlup v. Delo*, 513 U.S. 298, 319 (1995); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Fay v. Noia*, 372 U.S. 391, 438 (1963)) ("Habeas corpus is 'governed by equitable principles'"). Under 28 U.S.C. § 2243, a district court entertaining an application for a writ of habeas corpus must "dispose of the matter as law and justice require."  "[T]he statute does not deny the federal courts power to fashion appropriate relief other than immediate release."  *Peyton v. Rowe*, 391 U.S. 54, 66 (1968).  Indeed, "a court has broad discretion in conditioning a judgment granting habeas relief."  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  Furthermore, the Supreme Court has concluded that under this statutory discretion, "if the [government] establishes that there is a risk that the prisoner

will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him" pending appeal. *Id.* at 777. If the statute permits courts to consider dangerousness of a petitioner pending appeal, it follows that a court may consider the dangerousness of a detainee under a pending order of removal in fashioning a remedy.

DHS contends that Singh is dangerous. Indeed, the respondents begin their brief by noting that "[t]he last time the government released Ranjit Singh from immigration detention he sunk a kitchen knife into a man's chest." Docket Item 8 at 2. In light of the fact that Singh was convicted of manslaughter the last time that he was released on bond pending removal, this Court shares the government's concern.[7]

Although the dangerousness of an alien pending removal still may not justify indefinite detention, *see Zadvydas*, 533 U.S. at 685 (petitioner "was involved in a gang-related shooting, convicted of manslaughter, and sentenced to 38 months' imprisonment"), it may be considered when determining whether immediate release is the appropriate remedy, *see Hilton*, 481 U.S. at 779.[8] Moreover, as noted above, *see* note 6, *supra*, an alien's efforts to avoid removal may justify detention, and the government has asserted that Singh has done just that. In balancing all these

_____

[7]Singh already has served the sentence imposed by the State of New York for the crime on which he was convicted. If he were a citizen, he would be released. But "[g]overnmental conduct that may be considered 'shocking' when it serves to deprive the life, liberty or property of a citizen may not be unconstitutional when directed at an" individual pending removal. *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991).

[8] "In cases in which preventative detention is of a potentially *indefinite* duration, [the Supreme Court has] also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps create the danger." *Zadvydas v. Davis*, 533 U.S. 678, 691 (2001).

concerns, this Court will permit the government to continue holding Singh in detention for three months—until April 24, 2019. By setting forth a clearly fixed and defined release date under § 2243, Singh's detention can no longer be described as "indefinite," and thus lacks the associated legal and constitutional concerns associated with that status.

No later than April 24, 2019, the government shall: (1) release Singh from custody or (2) provide a date by which DHS reasonably expects him to be repatriated to India, including the reasons behind and evidence supporting that expectation. The government may move for an extension of that date based on evidence that Singh has refused to cooperate with, or otherwise has thwarted, efforts to remove him.[9]

### 2.    Risk of Flight/Dangerousness Hearing

Singh has been in custody for more than a year without an individualized hearing to determine whether he does, in fact, pose a risk of flight or danger to the community. Given the length of his detention, he is entitled to such a hearing.[10]  *See Sankara v. Whitaker*, 2019 WL 266462, at *5 (W.D.N.Y. Jan 18, 2019) (quoting *Hechavarria v. Sessions*, 2018 WL 5776421, at *6 (W.D.N.Y. Nov. 2, 2018)) ("As detention continues

---

[9] Such evidence might include reasons to believe Singh intentionally provided false information about his identity—such as differing information in his own handwriting, reasons to believe that differences were not due to spelling or translation errors, etc.  *See* note 6, *supra*.

[10] Singh's continued detention without such a hearing raises serious constitutional concerns.  If he remains in custody through April he will have been in DHS custody for almost a year and a half.  District courts have determined that due process requires, and have therefore ordered, a bond hearing in immigration detention cases when detention lasted as little as just over eight months.  *See Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018); *see also Hechavarria v. Sessions*, 2018 WL 5776421, at *6 (W.D.N.Y. Nov. 2, 2018) (compiling cases).

past a year, courts become extremely wary of permitting continued custody absent a bond hearing.").  Therefore, the government may not continue to detain Singh unless no later than fourteen days from the date of this decision, it demonstrates by clear and convincing evidence before a neutral decision maker that he is a danger to the safety of other persons or of property or is not likely to appear for his removal.  The decision maker must consider—and must address in any decision—whether there is clear and convincing evidence that no less restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes.[11]

### 3.    Limit on Transferring Singh

Singh has asked this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition."  Docket Item 1 at 15.  The respondents contend that this request is not subject to judicial review.  Docket Item 8 at 10-11.

Now that this Court has conditionally granted Singh's writ, his jurisdictional concerns are not unreasonable.  After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions

---

[11] *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10 (W.D.N.Y. Jan. 16, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *8-9 (W.D.N.Y. Nov. 2, 2018).  As a matter of procedural due process, the Supreme Court has "mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money.'"  *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)).

accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)).

In response the respondents cite 8 U.S.C. § 1231(g)(1) and 8 U.S.C. § 1252(a)(2)(B)(ii). 8 U.S.C. § 1231(g)(1) provides that:

> The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal. When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend from the appropriation "Immigration and Naturalization Service-- Salaries and Expenses", without regard to section 6101 of Title 41, amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention.

And § 1252(a)(2)(B)(ii) provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

This Court agrees that § 1231(g)(1) provides DHS with broad authority to decide where an alien is detained. But this Court need not speculate about the scope of that authority because "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where Singh is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with

DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. §
1231(g)(1).

## II.   SUBSTANTIVE DUE PROCESS

Because Singh will remain in custody under this Court's statutory "discretion in
conditioning a judgment granting habeas relief," *Hilton*, 481 U.S. at 775, this Court also
must address his constitutional objections to his continued detention.  Singh contends
that his "prolonged detention more than six months violates his right to substantive due
process under the Fifth Amendment."  Docket Item 1 at 13-14.[12]  Although "the full
trappings of legal protections that are accorded to criminal defendants are not
necessarily constitutionally required in deportation proceedings," *Dor v. Dist. Dir., I.N.S.*,
891 F.2d 997, 1003 (2d Cir. 1989), individuals who are not citizens, even those "whose
presence in this county is unlawful, have long been recognized as 'persons' guaranteed
due process of law by the Fifth and Fourteenth Amendments."  *Plyer v. Doe*, 457 U.S.
202, 210 (1982); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well
established that the Fifth Amendment entities aliens to due process of law in deportation
proceedings.").

Substantive due process protects individuals against government action that is

---

[12]Singh also contends that "his prolonged detention more than six months without
a meaningful review of his detention in accordance with federal regulations violates his
right to procedural due process under the Fifth Amendment."  *Id.* at 14.  Because this
Court is ordering that Singh receive an individualized release hearing, *see supra* at 15-
16, his procedural due process claim is moot.

arbitrary, conscience-shocking, or oppressive, but not against government action that is incorrect or ill-advised. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). As relevant here, the Second Circuit has explained that "[b]ecause the *Zadvydas* Court set forth [the] 'reasonable foreseeability' test in order to prevent [§ 1231 detention] from violating the Due Process Clause, . . . this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their [substantive] due process rights." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates [§ 1231], it also violates the Due Process Clause." *Id.*

The Second Circuit also has held that aliens given adequate procedural protections may remain detained pending removal for far longer than the time Singh will have been detained by the respondents pending his removal in April 2019. *See Doherty v. Thornburgh*, 943 F.2d 204, 212 (2d Cir. 1991) (concluding that detention pending removal for more than eight years did not violate substantive due process rights); *Dor*, 891 F.2d at 1003 (quoting *United Stats v. Gonzalez Claudio*, 806 F.2d 334 (2d Cir. 1986)) (concluding that an immigrant detained pending removal for more than five years after completing his sentence for first degree manslaughter did not inherently "exceed [] the flexible standards of due process."). Although "detention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause," *Wang*, 320 F.3d at 146, by issuing this Decision and Order, this Court uses its equitable authority in crafting habeas relief to cure the indefinite nature of Singh's detention with

only a brief and definite delay in his release.[13]   Therefore, Singh's detention has not yet

reached the point where substantive due process might require his release.

## III.   SINGH'S MOTION TO APPOINT COUNSEL

On October 5, 2018, Singh moved to appoint counsel.  Docket Item 2.  Under 28

U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to

afford counsel."  "Broad discretion lies with the district judge in deciding whether to

appoint counsel pursuant to this provision."  *Hodge v. Police Officers*, 802 F.2d 58, 60

(2d Cir. 1986).  In deciding whether to appoint counsel, courts may consider "whether

appointment of counsel would lead to a quicker and more just result by sharpening the

issues and shaping examination."  *Id.* at 61 (quoting *Ulmer v. Chancellor*, 691 F.2d 209,

---

[13]In *Hilton*, the Supreme Court explained that "the Due Process Clause [does not] prohibit[] a court from considering . . . the dangerousness of a habeas petitioner as part of its decision whether to release the petitioner pending appeal."  *Hilton*, 481 U.S. at 779.  The Court based its reasoning, however, on the fact that a successful "*state* habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State."  *Id.* at 779 (emphasis added).  In *Hilton*, the petitioner had been convicted and was serving a sentence for that conviction when the habeas order issued, but a constitutional error that occurred at the petitioner's state trial required a new trial.  *Id.* at 779.  Thus, the Court determined that the petitioner in *Hilton* was "in a considerably less favorable position than a pretrial arrestee, such as the respondent in *[United States v.] Salerno*[, 481 U.S. 739 (1987)], to challenge his continued detention pending appeal."  *Id.*

Here, Singh also was convicted of a crime by a New York State court.  But he completed that sentence and—except for the fact that he is not a United States citizen—his circumstance is closer to that of the "pretrial arrestee" in *Salerno* than to that of the petitioner in *Hilton*.  *See id.*  In any case, the brevity of his continued detention in this case overcomes any concern that his detention extends beyond the "outer bounds" of what substantive due process permits.  *See Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003).

213 (5th Cir. 1982)). Here, the Court will deny Singh's motion because this Court is substantially granting Singh's petition and thus does not believe that appointing him counsel now would lead to a "quicker" or "more just result."

## IV. SINGH'S MOTION TO DISMISS RESPONDENTS' UNTIMELY REPLY

On December 12, 2018, and on December 13, 2018, Singh moved to dismiss respondents' replies as untimely. Docket Items 11 and 12. The basis of his motion is that the respondents' deadline to answer his petition was November 24, 2018, but the respondents did not file their responses until November 26, 2018, which, Singh argues, "miss[ed] the Court's Deadline." Docket Item 12 at 1. November 24, 2018, was a Saturday. Under Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure,[14] if the last day of a deadline "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Here, that was Monday, November 26, 2018. Therefore, the respondents did not miss the deadline and Singh's motion is denied.

---

[14] This rule is made applicable to this proceeding under Rules 1(b) and 12 of the Rules Governing Section 2254 and 2255 Cases.

## CONCLUSION

For the reasons stated above, Singh's petition, Docket Item 1, and associated motion to grant release, Docket Item 2, is conditionally GRANTED in part. Singh's motion to appoint counsel, Docket Item 2, is DENIED. Singh's motion to dismiss respondents' untimely reply, Docket Items 11, 12, is DENIED.

IT IS HEREBY ORDERED that the Stay Order issued by United States District Court for the Western District of New York Chief Judge Frank P. Geraci on July 7, 2019, is lifted in this case and the parties shall meet all deadlines; and it is further

ORDERED that **within fourteen calendar days of the date of this Decision and Order**, the government must release Singh from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Singh's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community, and the neutral decision maker must consider alternatives to detention as addressed above; and it is further

ORDERED that within three days of holding a hearing under this order, the government shall file a status report with this Court; and it is further

ORDERED that unless Singh is repatriated to India or otherwise released from custody beforehand, the government shall, on or before April 24, 2019: (1) release Singh from custody, subject to reasonable and appropriate conditions of supervision as determined in accordance with applicable law and regulations; or (2) provide this Court

22

with a date by which DHS reasonably expects Singh to be repatriated to India, including

the reasons behind and evidence supporting that expectation; and it is further

ORDERED that unless otherwise ordered, on or before May 9, 2019,

respondents shall file a status report with this Court regarding Singh's removal or

release and any conditions imposed on such release.

SO ORDERED.

Dated:      January 23, 2019
             Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE